J-S20002-21 & J-S20003-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: L.J.W. AND K.L.W., MINORS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF J.W., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 284 MDA 2021 |

Appeal from the Order Entered February 4, 2021
In the Court of Common Pleas of Adams County Juvenile Division at No(s):
CP-01-DP-0000018-2008,
CP-01-DP-0000039-2019, RT-17-2020, RT-18-2020

| | | |
|---|---|---|
| IN RE: L.J. W., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: J.W., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 508 MDA 2021 |

Appeal from the Decree Entered February 4, 2021
In the Court of Common Pleas of Adams County Orphans' Court at No(s):
RT-17-2020(B)

| | | |
|---|---|---|
| IN RE:  K.L.W., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF:  J.W., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 509 MDA 2021 |

Appeal from the Decree Entered February 4, 2021

In the Court of Common Pleas of Adams County Orphans' Court at No(s):
RT-18-2020(B)

| IN THE INTEREST OF: L.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| APPEAL OF: J.W., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 510 MDA 2021 |

Appeal from the Order Entered February 9, 2021
In the Court of Common Pleas of Adams County Juvenile Division at
No(s):  CP-01-DP-0000018-2008

| IN THE INTEREST OF: K.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| APPEAL OF: J.W., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 511 MDA 2021 |

Appeal from the Order Entered February 9, 2021
In the Court of Common Pleas of Adams County Juvenile Division at
No(s):  CP-01-DP-0000039-2019

BEFORE:  NICHOLS, J., KING, J., and MUSMANNO, J.

MEMORANDUM BY NICHOLS, J.:                **FILED SEPTEMBER 07, 2021**

J.W. (Mother) appeals from the decrees granting the petitions of the Adams County Child and Youth Services (Agency) and involuntarily terminating her parental rights to L.J.W. (L.W.), born July 2007, and K.L.W. (K.W.), born November 2009 (collectively Children).  Mother also filed appeals

from the orders changing Children's goals to adoption.[1]  For the reasons that follow, we affirm.

The trial court summarized the factual and procedural history of this case in its February 2, 2021 findings of fact and conclusions of law.  ***See*** Findings of Fact & Conclusions of Law, 2/2/21, at 1-9.  We briefly note that the Agency first became involved with family in 2008, when it opened the case at CP-01-DP-0000018-2008 (DP-18-2008), and L.W. was adjudicated dependent.  That case was closed in 2010.

In January 2019, the Agency again became involved with the family based on reports that Mother, L.W., and K.W. were homeless and living in a camper without running water, electricity, or heat.  In August 2019, the Agency reopened the case at DP-18-2008 concerning L.W. and opened a new case at CP-01-DP-0000039-2019 (DP-39-2019) concerning K.W.  The court adjudicated Children dependent on August 29, 2019, and placed them with their current foster family.  Mother's objectives, in part, included (1) engaging in mental health services and (2) obtaining and maintaining safe and stable housing.

_____

[1] We have consolidated the appeals listed at J-S20002-21 and J-S20003-21, as they concern the same Children and the same issues.  Although the termination of parental rights cases used Children's middle names, *i.e.*, L.J.W. and K.L.W., the dependency cases omitted the references to the middle initials.  We use the shortened versions of the abbreviated names in this memorandum to maintain consistency with the trial court's opinions and Mother's and the Agency's briefs.

Children's Father, M.W., consented to adoption and is not a party to this appeal.

Although Mother initially made progress toward her objectives, Children became resistant to contact with Mother in October 2019, and concerns arose as to Mother's past physical abuse of Children. A November 15, 2019 permanency review order set concurrent goals of reunification and adoption.

The record indicates that supervised visitations at the Agency were halted due to the COVID pandemic in early 2020, but in-person visits resumed in May 2020. *See* Findings of Fact & Conclusions of Law at 6; *see also* N.T., 1/7/21, at 80. By August 2020, the Agency set unsupervised visits at Mother's apartment. However, Children displayed negative reactions before and after visits, and they expressed their desires not to be with Mother and to be adopted. *See* Findings of Fact & Conclusions of Law at 4, 7-8; *see also* N.T., 1/7/21, at 68-69, 91. In October, Children's therapist concluded that visitations were threatening Children's emotional well-being. Finding of Fact & Conclusions of Law at 8. On October 29, 2020, the Agency filed a motion to suspend Mother's visitation.

The caseworker testified as set forth below that Mother also regressed by October 2020, losing her employment, ending mental health counseling, and falling behind on her rent. *See* N.T., 1/7/21, at 84-88, 95-96; *see also* Findings of Fact & Conclusions of Law at 6, 8. Mother faced eviction, but she remained in her apartment due to COVID-related moratoriums until her eviction in December 2020. *See* Findings of Fact & Conclusions of Law at 8-9.

On November 4, 2020, the Agency filed petitions for the involuntary termination of Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(2), (5), (8), and (b), and for a goal change to adoption. The termination proceedings concerning L.W. and K.W. were docketed at RT-17-2020(B) and RT-18-2020(B), respectively.[2]

The trial court held hearings on January 7, 2021, at which the Agency presented its cases-in-chief, and January 8, 2021. On February 4, 2021, the trial court entered two separate orders in the termination of parental rights cases: (1) at RT-17-2020(B), an order granting the Agency's petition to terminate Mother's parental rights to L.W.; and (2) at RT-18-2020(B), an order granting the Agency's petition to terminate Mother's parental rights to K.W.[3] On February 9, 2021, the trial court entered two separate orders in the dependency cases that changed Children's goals to adoption.

_____

[2] The trial court entered preliminary decrees that, among other administrative matters, appointed Mother's dependency counsel to represent her in the termination matter, and appointed David K. James, Esq., Children's dependency *guardian ad litem* (GAL) to represent Children as legal counsel in the termination matter. The appointment of the GAL as Children's legal counsel complies with the mandate of 23 Pa.C.S. § 2313(a) and **In re Adoption of L.B.M.**, 161 A.3d 172, 183 (Pa. 2017), and this Court may not *sua sponte* review whether there was a conflict in Children's best and legal interests. **See In re Adoption of K.M.G.**, 240 A.3d 1218, 1236 (Pa. 2020). In any event, the record shows there was no conflict in Children's best and legal interests.

[3] Each of the orders in the termination of parental rights cases listed a single trial court docket number and the name of the respective child. The orders also stated, "This Order shall become absolute as of course if no appeal is taken within thirty (30) days pursuant to Pa.R.A.P. 341." Orders, RT-17-
*(Footnote Continued Next Page)*

- 5 -

Appellant initially filed a timely notice of appeal and a Pa.R.A.P. 1925(a)(2)(i) and (b) statement on March 2, 2021, and subsequently filed four amended notices of appeal after this Court issued a rule to show cause why Mother's appeal should not be quashed.[4]   This Court *sua sponte*

_____

2020(B) & RT 18-2020(B).  Unlike **Commonwealth v. Larkin**, 235 A.3d 350 (Pa. Super. 2020) (*en banc*), *appeal denied*, 251 A.3d 773 (Pa. 2021), the trial court here did not appear to misstate the need for Mother to file separate notices of appeal from each order terminating her parental rights.  **See Larkin**, 235 A.3d at 354.

[4] Specifically, Mother's counsel apparently electronically filed a timely notice of appeal on March 2, 2021, at 10:43 a.m. in the dependency record. However, the clerk of the court also appears to have stamped a copy of a March 2, 2021 notice of appeal as being received at 2:22 p.m. in the termination matters, and then placed photocopies of the 2:22 p.m. notice of appeal in the each of the termination of parental rights records.  The clerk of the court also docketed the notice of appeal at each of the termination records. Notably, the photocopies of the 2:22 p.m. notice of appeal in the termination of parental rights records do not have the electronic filing time stamps that were on the copy of the notice of appeal in the dependency record.

On April 20, 2021, after this Court issued the rule to show cause, Mother's counsel filed separate amended notices of appeal at each dependency and termination of parental rights dockets.  Although Mother separately filed her April 20, 2021 amended notices of appeal at the termination dockets, her amended notices of appeal were filed after the thirty-day period for taking an appeal pursuant to Pa.R.A.P. 903(a).  **See** Pa.R.A.P. 903(a); **see also** Pa.R.A.P. 105(b) (noting that "the court may not enlarge the time for filing a notice of appeal").  Therefore, because they are untimely on their face, Mother's amended notices of appeal do not automatically perfect this Court's jurisdiction.  **Cf. Commonwealth v. Keys**, 460 A.2d 253, 254-55 (Pa. Super. 1983) (quashing an appeal where the appellant filed an untimely amendment to list the bill of information actually challenged on appeal when his initial, timely filed notice of appeal listed the wrong bill of information).

We acknowledge that neither the parties nor the trial court have addressed Mother's apparent failure to separately file notices of appeal at the termination
*(Footnote Continued Next Page)*

consolidated the appeals taken from the amended notices of appeal. These appeals follow.

Mother presents the following issues for our review:

1. Did the trial court err in determining that the [Agency] demonstrated by clear and convincing evidence that the repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his (her) physical or

_____

dockets within thirty days. However, the record reveals possible discrepancies that may raise issues of fact concerning Mother's filing, or attempt to file, at least one notice of appeal at the termination dockets on March 2, 2021. Specifically, the record reveals a four-hour difference from the time when the clerk of the court received the electronically filed March 2, 2021 notice of appeal in the dependency record and the time when the clerk of the court hand-stamped a copy of the notice of appeal as received in the termination records. Additionally, the photocopies of the March 2, 2021 notices of appeal in the termination records are not identical copies of the notice of appeal in the dependency record, as the photocopies in the termination record do not bear the same electronic filing time stamp as the copy in the dependency record.

Therefore, we cannot conclusively determine whether Mother failed to file or attempted to file at least one timely notice of appeal to the termination of parental rights orders from the face of the record. We could remand these appeals for the trial court to find additional facts relevant to Mother's efforts to separately file timely notices of appeal from the termination of parent rights decrees on March 2, 2021, but decline to remand. *Cf. In re L.S.* 381 MDA 2021, 2021 WL 3579393, at *1 (Pa. Super. filed Aug. 13, 2021) (unpublished mem.) (considering the merits of appeals taken by amended notices of appeal filed in the same county's court and by the same counsel who is currently representing Mother). We strongly caution counsel that her failure to separately file timely notices of appeal from the orders she intends to appeal will result in quashal, but we decline to quash the instant appeals. *See In re S.D.*, ___ A.3d ___, 2021 PA Super 126, 2021 WL 2521629, *3 (Pa. Super. filed June 21, 2021). However, as was recently done under similar circumstances involving the same parties, we will consider these appeals. *Cf. In re L.S.*, 2021 WL 3579393, at *1; Pa.R.A.P. 126(b) (permitting citation to an unpublished non-precedential memorandum decision of the Superior Court filed after May 1, 2019, for its persuasive value).

mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent, pursuant to 23 Pa.C.S.A. § 2511(a)(2)?

2. Did the trial court err in determining that the Agency demonstrated by clear and convincing evidence that the child was removed from Mother's care by Order of Court for a period of at least six months, the conditions which led to the removal continue to exist, Mother cannot or will not remedy those conditions within a reasonable period of time, services reasonably available to [her] are not likely to remedy those conditions within a reasonable period of time, and termination of [her] parental rights would best serve the need and welfare of the child pursuant to 23 Pa.C.S.A. § 2511(a)(5)?

3. Does the trial court's decision to terminate parental rights of Mother best serve the developmental, physical, and emotional needs and welfare of the children pursuant to 23 Pa.C.S.A. § 2511(b)?

Mother's Brief at 4-5.

**Preliminary Matters**

Initially, we consider the issues that are properly before this Court in these appeals. We also consider the Agency's assertion that "there are several reasons which require Mother's appeal to be dismissed."[5]  Agency's Brief at 6.

_____

[5] We note that it also appears that Mother has not ensured that this Court has a complete record of the termination proceedings. Specifically, it appears that the trial court held hearings on January 7 and January 8, 2021, but Mother only requested that the January 7, 2021 hearing be transcribed. The failure to provide a complete record for review itself may result in waiver and the dismissal of an appeal. *See **In re R.N.F.***, 52 A.3d 361, 365 (Pa. Super. 2012) (dismissing an appeal where the failure to recreate the contents of a missing transcript precluded meaningful appellate review).

However, as discussed below, Mother's arguments essentially contest the trial court's findings of fact based on evidence contained in the record certified to
*(Footnote Continued Next Page)*

First, we note that Mother's Rule 1925(b) statement and appellate brief failed to challenge to the dependency orders changing Children's goal to adoption. Therefore, Mother has abandoned any challenge to the dependency proceedings by failing to raise them in her Rule 1925(b) statement and failing to argue them in her appellate brief, and we affirm the dependency orders without further discussion. *See In re M.Z.T.M.W.*, 163 A.3d 462, 465 (Pa. Super. 2017).

Second, as to Mother's challenges to the decrees terminating her parental rights, the Agency argues that Mother failed to preserve a claim to the trial court's ruling under Section 2511(a) and that Mother only preserved a challenge to the trial court's ruling on Section 2511(b). Specifically, the Agency contends that "Mother's appeal should be dismissed without addressing the merits of her claims because she failed to raise a challenge under" Section 2511(a)(8), one of the subsections cited in its petitions to terminate Mother's parental rights. Agency's Brief at 6, 11.

Following our review, we agree with the Agency that Mother's failure to challenge the trial court's ruling under Section 2511(a)(8) results in waiver.

_____

this Court. Specifically, Mother highlights portions of the record before this Court to assert that the trial court abused its discretion or erred in granting the Agency's petitions to terminate her parental rights. For these reasons, we decline to dismiss Mother's appeal based on an incomplete record but note that we deem any matters not contained in the certified record as non-existent. *See id.* (dismissing an appeal where the failure to recreate the contents of a missing transcript precluded meaningful appellate review); *Woskob v. Woskob*, 843 A.2d 1247, 1257 (Pa. Super. 2004) (reiterating that "[f]or purposes of appellate review, what is not of record does not exist" (citation omitted)).

Mother's failure to contest subsection (a)(8) concedes that subsection and further compels us to conclude that the trial court properly terminated her parental rights pursuant to Section 2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (noting that this Court need only agree with the trial court's decision as to any one subsection of Section 2511(a) and subsection (b) in order to affirm the termination of parental rights); *see also In re K.T.E.L.*, 983 A.2d 745, 750 (Pa. Super. 2009) (finding challenges to several subsection (a) waived where the parent did not include the claims in the statement of questions involved). Accordingly, Mother waived her challenge to the trial court's ruling under Section 2511(a), and her first two appellate issues, which only argue error based on subsections (a)(2) and (5), merit no relief. Therefore, we affirm the trial court's decision to terminate Mother's parental rights under Section 2511(a).[6]

_____

[6] Even if we were to consider the trial court's rulings under Section 2511(a), we would affirm the trial court's determinations that the Agency established the grounds for termination under subsections (a)(2), (5), and (8). The record supported the trial court's findings that Children had been in care for more than twelve months, that Mother initially made progress toward reunification but regressed in terms of her mental health treatment and housing goals, and that Children were adversely affected by continuing contact with Mother. *See* Findings of Fact & Conclusions of Law, 2/4/21, at 1-9. Additionally, the trial court's legal conclusions were sound. *See* Rule 1925(a) Op., 3/22/21, at 5-6; *see also In re B.C.*, 36 A.3d 601, 607 (Pa. Super. 2012) (summarizing the elements of Section 2511(a)(5) as "(1) the child has been removed from parental care for at least six months; (2) the conditions which led to the child's removal or placement continue to exist; (3) the parents cannot or will not remedy the conditions which led to removal or placement within a reasonable period time; (4) the services reasonably available to the parents are unlikely to remedy the conditions which led to removal or placement within a
*(Footnote Continued Next Page)*

In sum, we conclude that Mother has abandoned appellate review of the dependency orders changing Children's goals to adoption and waived her challenge to the decrees terminating her parental rights pursuant to Section 2511(a). However, Mother preserved her challenge to the trial court's ruling to terminate her parental rights pursuant to Section 2511(b). Therefore, we will not dismiss these appeals and will consider Mother's claim that the trial court erred in concluding that the termination of her parental rights best served the needs and welfare of Children under Section 2511(b).

**Section 2511(b)**

Mother's challenge to the trial court's ruling under Section 2511(b) focuses on the recommendation of Children's trauma therapist, Amanda Evans Freet, that Mother's visitation with Children be halted due to concerns about trauma. Mother's Brief at 18. Mother argues:

---

reasonable period of time; and (5) termination of parental rights would best serve the needs and welfare of the child" (citation omitted)); *id.* at 611 (summarizing elements of Section 2511(a)(8) as: "(1) the child has been removed from the care of the parent for at least twelve months; (2) the conditions that led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child" (citation omitted)); ***In re Adoption of M.E.P.***, 825 A.2d 1266, 1272 (Pa. Super. 2003) (summarizing elements of Section 2511(a)(2) as: "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied" (citation omitted)).

> The therapist for the children, [Ms. Freet], acknowledged during her testimony that she had never met with Mother, nor had she witnessed Mother and the [C]hildren together. The caseworker, Joy Christianson, stated that the [C]hildren would engage with Mother when they were in the room with her during visits. Ms. Christianson further stated that the [C]hildren were less engaged following the halt to in-person visits between Mid-March and May 28, 2021 (when visits were halted due to C[OVID]-19). Ms. Christianson stated that Mother's home was appropriate when the Agency moved forward with allowing visits to commence at Mother's home in August 2020.
>
> While [C]hildren displayed behaviors in the foster home, interactions with Mother during visits were appropriate and showed that Mother and the [C]hildren had a relationship.

Mother's Brief at 18-19. Mother concludes that the trial court erred in concluding that there was no positive bond between Mother and Children and that termination of her parental rights would not be detrimental to Children. *See id.* at 17-18 (stating that "a court must ask if termination of parental rights sever an emotional bond between parent and child in such a way as to be detrimental to the child").

The Agency responds that it presented testimony that clearly "demonstrates that termination is in the best interests of the [C]hildren." Agency's Brief at 9. The Agency emphasizes that "[t]he trauma was so pervasive that the [C]hildren were having physiological reactions to contact with [M]other, such as night terrors and vomiting." *Id.* The Agency continues that Mother's "relationship with the [C]hildren was so severed that it was determined that family therapy would not be successful and could result in further trauma to the [C]hildren." *Id.* at 9-10.

The GAL states that the Agency presented clear and convincing evidence that termination of Mother's parental rights best benefited the developmental, physical, and emotional needs and welfare of Children. GAL's Brief at 11. The GAL emphasizes that the foster parents have "filled the void created by [Mother's] inability or unwillingness to provide parental care to [Children]." *Id.* at 10.

In reviewing an appeal from an order terminating parental rights, we apply the following standard of review:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. [*In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010)]. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.
>
> As we discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by

the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012) (some citations omitted).

The burden is on the petitioner "to prove by clear and convincing evidence that [the] asserted grounds for seeking the termination of parental rights are valid." *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). We have explained that "[t]he standard of clear and convincing evidence is defined as testimony that is so 'clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.'" *Id.* (citation omitted).

Section 2511(b) states:

> **(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(b).

Our Supreme Court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love,

- 14 -

comfort, security, and stability." In ***In re E.M.***, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. However, as discussed below, evaluation of a child's bonds is not always an easy task.

***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013) (some citations omitted). The

***T.S.M.*** Court added that a court must pay attention "to the pain that inevitably

results from breaking a child's bond to a biological parent, even if that bond

is unhealthy, and . . . weigh that injury against the damage that bond may

cause if left intact." ***Id.*** at 269.

Here, the trial court concluded:

[C]hildren expressed feeling unsafe around [Mother]. The intense anxiety of the [C]hildren during contacts with [Mother] manifested itself through the children vomiting, urinating their clothing, and experiencing nightmares including night terrors with screaming, crying, and flailing. L.W. even shared with a therapist her desire for [Mother] to be dead. The [C]hildren's trauma therapist opined that visits between [Mother] and [C]hildren are "causing grave threat of harm to the [C]hildren's emotional well-being." Consistent with the opinion from the [C]hildren's therapist, the evidence was overwhelming that continuance of a relationship between [Mother] and children would make a successful outcome unlikely and ultimately be detrimental to the children.

Conversely, the [C]hildren expressed a feeling of safety while residing with the resource family and were positively bonding with foster parents and other children residing in the foster home. The foster parents were following through with ensuring the [C]hildren were receiving needed treatment. Additionally, the [C]hildren were participating in age appropriate activities. Although not expressed in this [c]ourt's findings of fact, observations of the [C]hildren throughout the life of this litigation confirmed significant positive growth in their presentation, physical appearance, and social skills subsequent to their removal from [Mother]'s custody. The evidence clearly established the

> [C]hildren's developmental, physical, and emotional needs and welfare were best advanced by termination of [Mother]'s rights.

Rule 1925(a) Op. at 3-4.

The record contains ample support for the trial court's findings and legal conclusions. Ms. Christianson, the Agency's caseworker, testified that Children's fear of Mother became apparent in October 2019. N.T., 1/7/21, at 82. Nevertheless, the supervised visits in October 2019 went well, and Children appeared to engage with Mother. *Id.* at 70, 92. However, after the pause during the COVID-19 pandemic, Children were more cautious and less playful during visits. *Id.* at 70, 93. Ms. Christianson and foster mother both testified that Children were reluctant to go to supervised visits at the Agency and on occasion had to be coaxed to leave the car. *Id.* at 66, 91.

Ms. Christianson testified that Children's fears increased as discussions of unsupervised visitations increased. *Id.* at 82. Foster mother also testified that L.W. began to vomit before and after the unsupervised visits at Mother's apartment, that Children began antagonizing each other before visits, and that K.W. began having nightmares, which progressed to night terrors in August 2020. *Id.* at 62-65.

Ms. Evans Freet, Children's trauma therapist since September 2020, stated that Children showed increasing trauma symptoms before and after any type of visit. *Id.* at 15. Children told Ms. Evans Freet that they were fearful of returning to Mother and not having a supervisor present during visits. *Id.* at 19. Ms. Evans Freet testified that Children displayed symptoms

of hyperactivity, impulsiveness, and hypervigilance which typically would lead to a diagnosis of post-traumatic stress disorder. *Id.* at 20-21. As noted by the trial court, Ms. Evans Freet reported on October 21, 2020, that she believed that visitation with Mother caused a "grave threat of harm to [Children's] emotional wellbeing." Letter by Amanda Evans Freet, 10/21/20 at 2; *see also* N.T., 1/7/21, at 17, 36, 29; Rule 1925(a) Op. at 4.

Ms. Evans Freet concluded that the termination of Mother's parental rights would not have adverse effects due to Children's lack of trust in Mother and their statements about not wanting further contact with Mother. N.T., 1/7/21, at 23. Ms. Evans Freet testified that the effects of terminating Mother's parental rights would be positive for Children's sense of consistency, safety, and ability to address their trauma. *Id.* at 23-24. Similarly, Ms. Christianson concluded that termination would not negatively impact Children, noting that they told her they were happy about not having further contact with Mother. *Id.* at 91.

Lastly, Ms. Evans Freet testified that she had no concerns with the foster family. *Id.* at 24. Ms. Christianson testified that foster parents are pre-adoptive resources. *Id.* at 80.

Based on this record, we discern no abuse of discretion in the trial court's findings of fact or conclusions of law that the Agency established the grounds for termination under Section 2511(b). *See T.S.M.*, 71 A.3d at 267. The evidence supported the trial court's finding that there were no bonds between Mother and Children, and to the extent that bonds existed,

termination of Mother's parental rights remained in the best interest of the Children. We acknowledge Mother's argument that Ms. Evans Freet did not observe Children's interactions with Mother and that Ms. Christianson only observed one such interaction. However, the record supports the trial court's findings of fact and conclusions of law that Children lacked positive bonds with Mother due to their fear of Mother and that termination of Mother's parental rights best advanced Children's developmental, physical, and emotional needs and welfare. *See id.*; *S.P.*, 47 A.3d at 826-27.

For these reasons, Mother's claim that the trial court erred in terminating her parental rights under Section 2511(b) lacks merit, and we affirm the trial court's ruling that termination would serve the best interests of Children.

Orders and decrees affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>09/07/2021</u>